**MOTLEY RICE LLC**
Michael G. Daly, Esq., ID No. 025812010
Joshua M. Neuman, Esq., ID No. 209832016
1717 Arch Street, Suite 2610
Philadelphia, PA 19103
mdaly@motleyrice.com
jneuman@motleyrice.com
Phone: (267) 267-4740
Fax: (267) 267-4759
*Attorneys for Plaintiff, Matthew Juliano*

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **MATTHEW JULIANO,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**NURSE ASSIST, LLC, ADAPTHEALTH CORP., LBC CREDIT PARTNERS IV, L.P., LBC-P CREDIT FUND, L.P., LBC-A CREDIT FUND, L.P., CIFC ASSET MANAGEMENT, LLC, CIFC LLC, and McKESSON MEDICAL-SURGICAL, INC.,**<br><br>**Defendants.** | **Civil Action No. 1:25-cv-13512**<br><br>**JURY TRIAL DEMANDED** |

**SECOND AMENDED COMPLAINT**

Plaintiff, Matthew Juliano ("Plaintiff"), by and through his undersigned counsel, files this Second Amended Complaint against Defendants, Nurse Assist, LLC, AdaptHealth Corp., LBC Credit Partners IV, L.P., LBC-P Credit Fund, L.P., LBC-A Credit Fund, L.P., CIFC Asset Management, LLC, CIFC LLC, and McKesson Medical-Surgical, Inc. ("Defendants"), and in support thereof states the following:

**NATURE OF THE ACTION**

1. This action arises out of Plaintiff's use of Sterile 0.9% Normal Saline USP products

(hereinafter, the "Product" and/or "SteriCare") that were manufactured, imported, sold, marketed, labeled, distributed, and financially controlled by Defendants.

2. Due to Defendants' negligent, reckless and/or intentional misconduct, consumers, like Plaintiff, used Defendants' Product, which was widely recalled on or about November 6, 2023 due to a "potential contamination."[1]

3. In the voluntary recall, Defendants admitted that "[i]n populations most at risk, such as patients who are immunocompromised, there is a possibility the use of the affected product could potentially result in severe of life-threatening adverse events."[2]

4. As a result of Plaintiff's use of Defendants' Product, Plaintiff suffered gas gangrene and necrotizing fasciitis of the right foot, which led to permanent injuries and complications, including a below-the-knee amputation.

5. Plaintiff has suffered, and continues to suffer, economic damages due to Defendants' misconduct.

6. Plaintiff alleges the following based upon personal knowledge as well as investigation by counsel, and as to all other matters, upon information and belief.

7. Plaintiff further believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## THE PARTIES

### Plaintiff

8. Plaintiff, Matthew Juliano is, and at all times relevant hereto has been, a citizen and resident of National Park, New Jersey.

---

[1] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/nurse-assist-llc-issues-recall-09-sodium-chloride-irrigation-usp-and-sterile-water-irrigation-usp (last accessed July 17, 2025).
[2] *Id.*

**Defendants**

9. Defendant, Nurse Assist, LLC ("Nurse Assist") is, and at all times relevant to this action was, a Delaware Limited Liability Company with its principal place of business located at 4409 Haltom Road, Haltom City, Texas 76117. Nurse Assist designs, manufacturers, markets, advertises, labels, distributes, packages, imports, supplies, and sells the Product at issue in this litigation.

10. Defendant, AdaptHealth Corp. ("AdaptHealth") is, and at all times relevant to this action was, a Delaware Limited Liability Company with its principal place of business located at 220 W Germantown Pike, Suite 250, Plymouth Meeting, PA 19462. AdaptHealth distributes, supplies, and sells the Product at issue in this litigation.

11. Defendants, LBC Credit Partners IV, L.P., LBC-P Credit Fund, L.P., and LBC-A Credit Fund, L.P. ("LBC Funds"), are, and at all times relevant to this action were, Delaware Limited Partnerships, with their principal places of business located at 555 East Lancaster Avenue, Suite 450, Radnor, PA 19087. Upon information and belief, the LBC Funds are alternative investment vehicles ("AIVs") that own/acquired a majority stake in Nurse Assist. Due to their "majority stake," the LBC Funds have/had financial control over Nurse Assist at all material times hereto.

12. Defendant, CIFC Asset Management, LLC, is, and at all times relevant to this action was, a Delaware Limited Liability Company with its principal place of business located in Delaware.

13. Defendant, CIFC LLC, is, and at all times relevant to this action was, a Pennsylvania Limited Liability Company with its principal place of business located at One West First Avenue, Suite 400, Conshohocken, PA 19428.

14. Upon information and belief, Defendants, CIFC Asset Management, LLC and CIFC LLC ("CIFC"), are an asset management/private equity firm that manage the LBC Funds and have/had financial control over Nurse Assist at all material times hereto.

15. Defendant, McKesson Medical-Surgical, Inc. ("McKesson"), is, and at all times relevant to this action was, a Virginia Corporation, with a principal address located at 9954 Mayland Drive, Suite 4000, Henrico, VA 23233. McKesson labels, distributes, and supplies the Product at issue in this litigation.

16. Prior to the date that Plaintiff used the Product, Defendants possessed technical, medical, and/or scientific data from which Defendants knew or should have known through the exercise of reasonable diligence that the Product was or could be contaminated and was thereby hazardous to the life, health, and safety of persons, such as Plaintiff, who were exposed to the Product.

17. At all pertinent times, Defendants, Nurse Assist, AdaptHealth, and McKesson, were engaged in the research, development, manufacture, design, testing, packaging, labeling, sale, and marketing of the Product throughout the United States and within the State of New Jersey.

18. At all pertinent times, Defendants, LBC Funds and CIFC, were engaged in the financial control of Nurse Assist and the Product throughout the United States and within the State of New Jersey.

19. At all pertinent times, Defendants, LBC Funds and CIFC, as the "controlling investors" and "majority stakeholders" of the Nurse Assist SteriCare Product, profited off of the manufacture, sale, and distribution of the Product in New Jersey and throughout the United States, and are liable for injuries caused by the defective Product pursuant to an alter ego and/or piercing the corporate veil theory, as further detailed below.

## **JURISDICTION AND VENUE**

20. This Court has subject-matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a), because the amount in controversy exceeds $75,000, and Plaintiff and Defendants are residents of different states.

21. At all relevant times, Defendants, individually and/or collectively, manufactured, designed, marketed, labeled, distributed, promoted, sold, and/or financially controlled the Product at issue in this litigation, which was contaminated and voluntarily recalled on or about November 6, 2023, to New Jersey consumers like Plaintiff.

22. This Court has personal jurisdiction over Defendants because Defendants have purposefully availed themselves in New Jersey and have engaged in significant, continuous, and systemic business activities and targeted contacts with the State of New Jersey. Further, Defendants regularly conduct business in the State of New Jersey relating to the promotion, marketing, distribution, sale, and/or financial control of the Product. As such, jurisdiction over Defendants would not offend due process or traditional notions of fair play and substantial justice.

23. This Court has specific personal jurisdiction over the Defendants because Plaintiff's cause of action arose directly out of Defendants' contacts with New Jersey, i.e. the marketing, sale, distribution, and financial control of the contaminated Product to Plaintiff in New Jersey, which caused his injuries in New Jersey.

24. At all material times hereto, Defendants had sufficient minimum contacts with New Jersey because Defendants purposefully marketed, sold, distributed, and financially controlled the Product in New Jersey, which led to Plaintiff's injuries. These contacts were not due to any unilateral activities of Plaintiff.

25. This Court also has specific personal jurisdiction over the Defendants due to the

Product-specific business activities, including but not limited to the promotion, marketing, sale, distribution, and financial control of the adulterated and contaminated Product, which took place in the State of New Jersey and caused Plaintiff's injuries in New Jersey.

26. Defendants are engaged in substantial and not isolated business activities within the State of New Jersey.

27. Given the marketing, sale, and distribution of the Product to individuals and businesses in New Jersey, Defendants should reasonably anticipate being haled into court in New Jersey. Defendants' contacts with New Jersey were not random, fortuitous, or attenuated.

28. Upon information and belief, Defendants are subject to jurisdiction within the State of New Jersey and this Court because at all relevant times, Defendants committed tortuous acts within the State of New Jersey out of which these causes of action arise.

29. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(a) and (b)(2) and 1391(c)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, and the Defendants are subject to this Court's personal jurisdiction. Venue is also proper under 18 U.S.C. § 1965 (a) because Defendants transact substantial business in this district.

30. Upon information and belief, at all relevant times, Defendants were present and transacted, solicited, and conducted business in the State of New Jersey through their employees, agents, and/or sales representatives and derived substantial revenue from such business.

31. At all relevant times, Defendants expected or should have expected that their acts and omissions would have consequences within the United States and the State of New Jersey.

## **FACTUAL ALLEGATIONS**

32. In December of 2021, Plaintiff stubbed his toe at home, which caused a small

wound to form.

33. Over the course of the next several months, Plaintiff treated with Cornerstone Foot & Ankle in Sewell, New Jersey to treat his foot wound.

34. On or about June 20, 2022, Plaintiff's partner was changing Plaintiff's wound dressings on his foot and noticed a scab forming. To treat his wound, Plaintiff's partner applied Sterile 0.9% Normal Saline, USP (i.e. the Product at issue), which was purchased and distributed by AdaptHealth, labeled and distributed by McKesson, and manufactured and supplied by Nurse Assist.

35. On June 23, 2022, Plaintiff's partner was changing Plaintiff's wound dressings and saw a substance oozing out of the wound. Plaintiff was immediately taken to the emergency room at Jefferson Washington Township Hospital and was diagnosed with gas gangrene and necrotizing fasciitis. Plaintiff was transported via life-flight to Jefferson Stratford Hospital and underwent surgery to treat his severe infection.

36. Plaintiff remained hospitalized at Jefferson Health until July 4, 2022. During his hospitalization, he was implanted with a wound VAC, with multiple incisions and drainage from his right foot and ankle due to gas gangrene.

37. Following his discharge, Plaintiff treated with numerous medical providers due to his foot infection. Plaintiff was hospitalized in August and October of 2022, and March and July of 2023, for continued treatment of his infection. Plaintiff also continuously treated with his podiatrists during this time. During this time, unbeknownst to Plaintiff, his wounds were treated and cleaned using the contaminated saline fluid manufactured, designed, marketed, labeled, distributed, promoted, sold, and/or financially controlled the Defendants.

38. Despite continued treatment and attempts to rehabilitate his infection, in September

2023, Plaintiff was referred to vascular surgery for amputation.

39. On November 15, 2023, Plaintiff underwent a right below knee amputation due to his traumatic wound with retained devitalized tissue, existing clinical infections and perforated viscera.

40. During the amputation, Plaintiff suffered a heart attack.

41. Following extubation, Plaintiff became increasingly tachypneic leading to subsequent re-intubation.

42. As a result of Plaintiff's heart attack during the amputation procedure, Plaintiff required placement of a drug-eluting stent in his LAD and monitoring in the ICU.

43. On or about November 6, 2023, Defendants initiated a voluntary recall of the Product because the Product was nonsterile and potentially contaminated with bacteria.

44. In the voluntary recall, Defendants admitted that "[i]n populations most at risk, such as patients who are immunocompromised, there is a possibility the use of the affected product could potentially result in severe of life-threatening adverse events."[3]

45. On or about March 12, 2024, Plaintiff received a letter from AdaptHealth confirming the Product he purchased, which was manufactured, imported, sold, marketed, labeled, and distributed by Nurse Assist; labeled and distributed by McKesson, and sold, distributed, and supplied by AdaptHealth; and financially controlled by LBC Funds and CIFC, was subject to the voluntary recall initiated by Defendants.

46. Plaintiff could not, by reasonable care, have averted damage and injury, as a result of using the contaminated Product.

---

[3] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/nurse-assist-llc-issues-recall-09-sodium-chloride-irrigation-usp-and-sterile-water-irrigation-usp#:~:text=for%20Irrigation%20USP-,Company%20Announcement,result%20in%20a%20nonsterile%20product (last accessed July 17, 2025).

47. As a result of Plaintiff's use of Defendants' Product, he contracted a serious infection which caused him to develop gas gangrene and necrotizing fasciitis, undergo several surgical procedures, including a below-the-knee amputation, for which he is still actively receiving treatment and extreme discomfort.

48. Plaintiff's injuries are debilitating and permanent.

**TOLLING OF THE STATUTE OF LIMITATIONS, FRAUDULENT CONCEALMENT, EQUITABLE TOLLING, AND CONTINUING VIOLATIONS.**

49. Despite diligent investigation by Plaintiff into the cause of his injuries, including consultations with his medical providers, the nature of his injuries and damages and their relationship to the Product was not discovered, and through reasonable care and diligence could not have been discovered, until a date within the applicable statute of limitations for filing Plaintiff's claims. Plaintiff did not and could not have become aware of the potential link between his injuries and the contaminated product until he reviewed the recall notice he received in March 2024, at the very earliest. Therefore, under appropriate application of the discovery rule, Plaintiff's suit was filed well within the applicable statutory limitations period.

50. Additionally, any applicable statutes of limitation have been tolled by Defendants' affirmative acts of fraudulent concealment and continuing misrepresentations and/or violations of the CGMPs, as the facts alleged herein reveal.

51. Because of the self-concealing nature of Defendants' actions and their affirmative acts of violating the requisite CGMPs, Plaintiff asserts the tolling of any applicable statutes of limitations affecting the claims raised herein.

52. Defendants are estopped from relying on any statute of limitations defense because of their unfair, negligent, and deceptive conduct.

53. By reason of the foregoing, the claims of Plaintiff are timely under any applicable

statute of limitations, pursuant to the discovery rule, the equitable tolling doctrine, and fraudulent concealment.

54. As pled below, Plaintiff seeks the application of the law of Plaintiff's domicile and forum state, New Jersey. However, should this court determine in a "choice of law" analysis that another state's law should apply to this matter, Plaintiff reserves the right to recover under the laws of that state.

**COUNT ONE: VIOLATION OF NJ PLA, N.J. STAT. § 2A:58C-1, *et seq.***
**(Against All Defendants)**

55. Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

56. Plaintiff brings a product liability action against Defendants, as that term is defined under N.J. Stat. § 2A:58C-1(3).

57. Defendant, Nurse Assist, LLC, is considered a manufacturer under N.J.S. § 2A:58C-8 because it (1) designs, formulates, produces, creates, makes, packages, labels or constructs any product or component of a product, (2) is a product seller with respect to a given product to the extent the product seller designs, formulates, produces, creates, makes, packages, labels or constructs the product before its sale, and (3) holds itself out as a manufacturer to the user of the product.

58. Defendant, Nurse Assist, LLC, is also a product seller, as that term is defined under N.J.S. § 2A:58C-8, because it, in the course of a business, "sells; distributes; leases; installs; prepares or assembles a manufacturer's product according to the manufacturer's plan, intention, design, specifications or formulations; blends; packages; labels; markets; repairs; maintains or otherwise is involved in placing a product in the line of commerce." N.J.S. § 2A:58C-8.

59. Defendant, AdaptHealth Corp., is a product seller, as that term is defined under

N.J.S. § 2A:58C-8, because it, in the course of a business, "sells; distributes; leases; installs; prepares or assembles a manufacturer's product according to the manufacturer's plan, intention, design, specifications or formulations; blends; packages; labels; markets; repairs; maintains or otherwise is involved in placing a product in the line of commerce." N.J.S. § 2A:58C-8.

60. Defendants, LBC Funds and CIFC, as the "controlling investors" and "majority stakeholders" of the Nurse Assist SteriCare Product, had financial control over the Nurse Assist SteriCare Product, and as a result, had responsibility for the manufacture, sale, and distribution of the Product.

61. Defendants, LBC Funds and CIFC, as the "controlling investors" and "majority stakeholders" of the Nurse Assist SteriCare Product, profited off of the manufacture, sale, and distribution of the Product.

62. Furthermore, Defendants, LBC Funds and CIFC, can be held responsible under the New Jersey Products Liability Act pursuant to an alter ego and/or piercing the corporate veil theory of liability due to (1) the domination and financial control over Defendant Nurse Assist and the SteriCare Product and (2) recognition of the corporate structure would perpetrate a fraud or injustice.

63. Defendant, McKesson, is considered a manufacturer under N.J.S. § 2A:58C-8 because it (1) designs, formulates, produces, creates, makes, packages, labels or constructs any product or component of a product, (2) is a product seller with respect to a given product to the extent the product seller designs, formulates, produces, creates, makes, packages, labels or constructs the product before its sale, and (3) holds itself out as a manufacturer to the user of the product.

64. Defendant, McKesson, is also a product seller, as that term is defined under N.J.S.

§ 2A:58C-8, because it, in the course of a business, "sells; distributes; leases; installs; prepares or assembles a manufacturer's product according to the manufacturer's plan, intention, design, specifications or formulations; blends; packages; labels; markets; repairs; maintains or otherwise is involved in placing a product in the line of commerce." N.J.S. § 2A:58C-8.

65. Defendants, as product manufacturers and/or sellers, are liable to Plaintiff under the New Jersey Product Liability Act because the SteriCare Product deviated from the design specifications, formulae, or performance standards of the manufacturer, failed to contain adequate warnings or instructions (as detailed further in the allegations below), and was designed in a defective manner. N.J.S. § 2A:58C-2.

66. Defendants, as product manufacturers and/or sellers, exercised some significant control over the design, manufacture, packaging, labeling, sale, and/or distribution of the SteriCare Product relative to the alleged defect in the product (*i.e.*, the unsterile, adulterated, and contaminated saline fluid) which caused the injury. N.J.S. § 2A:58C-9(d).

67. Further, the SteriCare Product was and is defective in both design and manufacture, as there were, and remain, "a practical and technically feasible alternative design that would have prevented the harm without substantially impairing the reasonably anticipated or intended function of the product." N.J.S. § 2A:58C-3(a)(1).

68. As a result of Defendants' violations of the New Jersey Products Liability Act, Plaintiff suffered severe infection and permanent damage, including amputation of his leg.

69. Defendants are liable in tort to Plaintiff for their wrongful and reckless conduct pursuant to New Jersey common and statutory law.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred,

attorneys' fees and all such other and further relief as this Court deems just and proper.

**COUNT TWO: NEW JERSEY PRODUCTS LIABILITY ACT (NJ PLA)**
**STRICT PRODUCTS LIABILITY – FAILURE TO WARN**
**(Against All Defendants)**

70. Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

71. Defendants sold the SteriCare Product in the course of Defendants' business.

72. Upon receiving the SteriCare Product, Plaintiff and Plaintiff's partner reviewed the Product packaging and labeling, including the instructions for use.

73. At all pertinent times, Plaintiff and/or Plaintiff's partner used the Product on Plaintiff's foot wound, which is a reasonably foreseeable use.

74. Defendants knew or should have known that the Product was not sterile and adulterated and/or contaminated with a dangerous and deadly bacterium.

75. At all pertinent times, including the time(s) of sale and use, the SteriCare Product, when put to the aforementioned reasonably foreseeable use, was in an unreasonably dangerous and defective condition because it failed to contain adequate and proper warnings and/or instructions regarding the potential presence of—and dangers of—pathogens within the bottles and/or packaging of the Product. Defendants themselves failed to properly test and adequately warn and instruct Plaintiff as to the risks and benefits of the Product, thus breaching the duty owed by Defendants to Plaintiff.

76. Defendants knew that the risk of exposure to an unsterile, adulterated, and contaminated saline fluid was not readily recognizable to an ordinary consumer and that consumers would not inspect the product for sterility.

77. Defendants were aware of the fact that their Product was used in a patient

population that was already at risk, i.e. patients that required wound care and would suffer greatly from an unsterile, adulterated, and/or contaminated saline fluid.

78. Defendants did not adequately test and/or give adequate warnings to Plaintiff that the Product was unsterile, adulterated, and contaminated.

79. Plaintiff was justified in his reliance on Defendants' manufacturing, labeling, packaging, marketing, and advertising of the Product for use as sterile saline fluid. Had Plaintiff received notice or a warning that the Product was unsterile, adulterated, and contaminated, he would not have used it and would not have suffered a severe infection and/or exacerbated infection, which led to amputation and permanent injuries.

80. Defendants' SteriCare Product was defective because Defendants failed to perform proper testing on the Product, and it failed to contain warnings and/or instructions and breached express warranties and/or failed to conform to express factual representations upon which Plaintiff justifiably relied in electing to use the Product. The defect or defects (*i.e.*, the *preventable*—or, at the very least, detectable before sale— unsterile, adulterated, and contaminated saline fluid) made the Product unreasonably dangerous to persons, such as Plaintiff, who could reasonably be expected to use such product. As a result, the defect or defects were a producing cause of Plaintiff's injuries and damages.

81. Defendants' SteriCare Product failed to contain adequate warnings and/or instructions regarding the potential presence of—and dangers of—a pathogen within the SteriCare Product.

82. Defendants' SteriCare Product failed to contain adequate warnings that the use of the unsterile, adulterated, and contaminated saline fluid could lead to a severe life-threatening infection.

83. As a proximate result of Defendants' design, manufacture, packaging, labeling, marketing, sale, and distribution of SteriCare Product, Plaintiff was injured catastrophically and was caused severe pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and economic damages.

84. Defendants are strictly liable to Plaintiff for their wrongful and reckless conduct pursuant to New Jersey common and statutory law.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

**COUNT THREE: NEW JERSEY PRODUCTS LIABILITY ACT (NJ PLA)**
**STRICT PRODUCTS LIABILITY – DEFECTIVE DESIGN AND MANUFACTURE**
**(Against All Defendants)**

85. Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

86. Defendants engaged in the design, development, manufacture, marketing, packaging, labeling, sale, distribution, and financial control of the SteriCare Product in a defective and unreasonably dangerous condition to consumers, including Plaintiff.

87. Defendants caused the SteriCare Product to enter the stream of commerce and to be sold through various retailers, which is how Plaintiff received the Product.

88. The SteriCare Product was expected to, and did, reach consumers, including Plaintiff, without change in the condition in which it was manufactured and sold by Defendants and/or otherwise released into the stream of commerce.

89. Plaintiff used the SteriCare Product in a manner normally intended, recommended, promoted, and marketed by Defendants.

90. Defendants violated CGMPs by manufacturing and producing an unsterile saline Product and failed, among other things, to properly test the Product for sterility and contaminants before placing the Product into the stream of commerce for consumers, like Plaintiff, to use.

91. The SteriCare Product failed to perform safely when used by Plaintiff in a reasonably foreseeable manner; that is, the unsterile, adulterated, and contaminated saline fluid rendered the Product unreasonably dangerous and exposed Plaintiff to a dangerous and deadly bacterium that caused him to suffer and exacerbate a serious infection, which resulted in amputation.

92. The SteriCare Product contained a manufacturing defect when it left the possession of Defendants. Specifically, the SteriCare Product differs from Defendants' intended result or from (possibly) other lots of the same product line because they were unsterile, adulterated, and contaminated, and Defendants failed to properly and adequately test the Product for sterility before distributing it.

93. Additionally, Defendants defectively designed the bottle that contained the SteriCare saline fluid, such that it contributed to the contamination and growth of bacteria.

94. Significantly, the SteriCare Product is a saline fluid that is required to be sterile due to its use in wound care. Safer alternatives, including sterile, unadulterated, and uncontaminated saline product, exist and have been readily available for decades.

95. As a proximate result of Defendants' design, manufacture, packaging, labeling, marketing, sale, and distribution of the Product, Plaintiff was injured catastrophically and was caused severe pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and economic damages.

96. Defendants are strictly liable to Plaintiff for their wrongful and reckless conduct

pursuant to New Jersey common and statutory law.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

**COUNT FOUR: NEW JERSEY PRODUCTS LIABILITY ACT (NJ PLA)**
**NEGLIGENCE / GROSS NEGLIGENCE**
**(Against All Defendants)**

97. Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

98. Defendants owed a duty of reasonable care to Plaintiff and other reasonably foreseeable consumers to not only ensure that the SteriCare Product was safe for intended use, but also that its labeling adequately warned of any and all risks associated with its use.

99. Defendants also owed a duty of reasonable care to Plaintiff and other reasonably foreseeable consumers to not market, design, manufacture, produce, supply, sell, and/or distribute unsafe and dangerous products that they knew or should have known through the exercise of reasonable diligence were unsafe and dangerous due to the lack of sterility of the saline fluid.

100. Defendants breached this duty of care owed to Plaintiff by failing to ensure that the Product was safe for use, as intended, and was properly tested and stored, as well as placing into the stream of commerce an unsafe and dangerous/adulterated product.

101. Consequently, it was reasonably foreseeable that Plaintiff—as a reasonable, foreseeable consumer—would use Defendants' Product and suffer injury from such use due to the lack of sterility and presence of bacteria and/or pathogens.

102. Plaintiff's injuries are also directly caused by Defendants' breach of the duty of reasonable care owed to Plaintiff, as but for Defendants' failure to appropriately warn of the

inherent dangers associated with the lack of sterility and potential presence of pathogens within the bottles and/or packaging of the Product, Plaintiff would not have used it and would not have suffered a serious infection and/or exacerbation of his infection, which caused amputation of his leg.

103. Defendants' negligence and extreme carelessness includes, but is not limited to: their marketing, designing, manufacturing, producing, supplying, inspecting, testing, selling, and/or distributing the Product in one or more of the following respects:

a. In failing to comply with Current Good Manufacturing Practices to ensure sterility of the Product and as discussed above;

b. In failing to manufacture the Product in a sterile environment and packaging to decrease the risk of bacterial growth and/or pathogens entering the Product;

c. In failing to warn Plaintiff of the hazards associated with the use of the Product;

d. In failing to properly test their products for microbials, as well as to determine adequacy and effectiveness or safety measures, if any, prior to releasing the SteriCare Product into the marketplace for consumer use;

e. In failing to inform product users, such as Plaintiff, as to the safe and proper methods of handling and using the Product;

f. In failing to remove the Product from the market when Defendants knew or should have known the Product was defective and/or contaminated;

g. In failing to instruct the Product user, such as Plaintiff, as to the methods for reducing the type of exposure to the unsterile saline fluid, which caused a severe infection and exacerbation of infection;

h. In failing to inform the public in general and Plaintiff, in particular, of the known dangers of using the Product—a supposedly sterile saline fluid;

i. In marketing and labeling the Product as safe for all uses despite knowledge to the contrary;

j. In failing to act like a reasonably prudent actor under similar circumstances;

k. In failing to accurately disclose in its labeling and advertising that the Product was contaminated with a bacterium and/or pathogens.

104. Each and all of these acts and omissions, taken singularly or in combination, were a proximate cause of the injuries and damages sustained by Plaintiff and constitute gross negligence.

105. At all pertinent times, Defendants knew or should have known that the Product was unreasonably dangerous and defective (*i.e.*, contaminated) when put to its reasonably anticipated use.

106. Defendants' acts and/or omissions constitute gross negligence because they constitute a total lack of care and an extreme departure from what a reasonably careful actor would do in the same situation to prevent foreseeable harm to Plaintiff.

107. Defendants acted and/or failed to act willfully, and with a conscious and reckless disregard for the rights and interests of Plaintiff; their acts and omissions had a great probability of causing significant harm and in fact resulted in such harm to Plaintiff.

108. Plaintiff was injured as a direct and proximate result of negligence and/or gross negligence as described herein.

109. Defendants' negligence and/or gross negligence was a substantial factor in causing and/or contributing to Plaintiff's harms.

110. Defendants are liable in tort to Plaintiff for their wrongful and reckless conduct pursuant to New Jersey common and statutory law.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

## COUNT FIVE: NEW JERSEY PRODUCTS LIABILITY ACT (NJ PLA) NEGLIGENT FAILURE TO WARN (Against All Defendants)

111. Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

112. At all relevant times, Defendants engaged in the design, development, manufacture, marketing, sale, and distribution of the SteriCare Product that was in a defective and unreasonably dangerous condition and was nonetheless marketed and sold to consumers, including Plaintiff.

113. Defendants were aware of the fact that their Product was used in a patient population that was already at risk, i.e. patients that required wound care and would suffer greatly from an unsterile, adulterated, and/or contaminated saline fluid.

114. Defendants knew, or by the exercise of reasonable care should have known, use of the SteriCare Product was dangerous, harmful, and injurious when used by Plaintiff in a reasonably foreseeable manner.

115. Defendants knew, or by the exercise of reasonable care, should have known that ordinary consumers, such as Plaintiff, would not have realized the potential risks and dangers of the SteriCare Product, and that the SteriCare Product was likely to increase the risks of infection and/or exacerbate infection, which renders it unreasonably dangerous when used in the manner it was intended and to an extent beyond what would be contemplated by the ordinary consumer.

116. Defendants owed a duty to all reasonably foreseeable consumers to disclose the risks associated with the use of the SteriCare Product.

117. Defendants breached their duty of care by failing to use reasonable care in providing adequate warnings on the SteriCare Product, including that the Product was likely to increase the risks of infection and/or exacerbate infection, which when used in the manner it was

intended and to an extent beyond that would be contemplated by the ordinary consumer.

118. Defendants' failure to adequately warn about their defective Product, and their efforts to misleadingly advertise through conventional avenues, created a danger of injuries that were reasonably foreseeable at the time of design and/or manufacture and distribution.

119. At all relevant times, Defendants could have provided adequate warnings and instructions to prevent the harms and injuries set forth herein, such as providing full and accurate information about the SteriCare Product in advertising.

120. A reasonable actor under the same or similar circumstances would have warned and instructed of the dangers associated with an unsterile, adulterated, and contaminated product and the potential presence and contamination of pathogens and/or bacteria.

121. Upon receiving the SteriCare Product, Plaintiff and Plaintiff's partner reviewed the Product packaging and labeling, including the instructions for use.

122. Plaintiff was injured as a direct and proximate result of Defendants' failure to warn and instruct, because he would not have used the SteriCare Product had he received adequate warnings and instructions that the Product could increase the risks of severe infection, which renders it unreasonably dangerous when used in the manner it was intended and to an extent beyond what would be contemplated by the ordinary consumer.

123. Defendants' lack of adequate and sufficient warnings and instructions, and their inadequate and misleading advertising, was a substantial contributing factor in causing harm to Plaintiff.

124. As a proximate result of Defendants' design, manufacture, marketing, packaging, labeling, sale, and distribution of the Product, Plaintiff was injured catastrophically and was caused severe pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and

economic damages.

125. Defendants are liable in tort to Plaintiff for their wrongful and reckless conduct pursuant to New Jersey common and statutory law.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

**COUNT SIX: NEW JERSEY PRODUCTS LIABILITY ACT (NJ PLA)**
**NEGLIGENT DESIGN AND MANUFACTURE DEFECT**
**(Against All Defendants)**

126. Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

127. At all relevant times, Defendants engaged in the design, development, manufacture, packaging, labeling, marketing, sale, distribution, and financial control of the SteriCare Product in a defective and unreasonably dangerous condition to consumers, including Plaintiff.

128. Defendants caused the SteriCare Product to enter the stream of commerce and to be sold through various retailers, which is how Plaintiff received it.

129. The SteriCare Product was expected to, and did, reach consumers, including Plaintiff, without change in the condition in which it was manufactured and sold by Defendants and/or otherwise released into the stream of commerce.

130. Plaintiff used the SteriCare Product in a manner normally intended, recommended, promoted, and marketed by Defendants.

131. The SteriCare Product failed to perform safely when used by Plaintiff in a reasonably foreseeable manner, specifically increasing his risk of developing and exacerbating a severe infection and resulting in amputation.

132. The propensity to the exposure of bacteria from the unsterile, adulterated, and contaminated saline renders the SteriCare Product unreasonably dangerous when used in the manner it was intended and to an extent beyond what would be contemplated by the ordinary consumer.

133. Safer alternatives, including sterile, unadulterated, and uncontaminated saline products to prevent contamination with bacteria, exist and have been readily available for decades.

134. Additionally, Defendants defectively designed the bottle that contained the SteriCare saline fluid, such that it contributed to the contamination and growth of bacteria.

135. Defendants knew, or by the exercise of reasonable care should have known, that the SteriCare Product was unreasonably dangerous but have continued to design, manufacture, package, label, sell, distribute, market, promote, and supply the Product so as to maximize sales and profits at the expense of public health and safety in conscious disregard of the foreseeable harm to the consuming public, including Plaintiff.

136. Defendants owed a duty to all reasonably foreseeable users to design a safe product.

137. Defendants breached their duty by failing to use reasonable care in the design and/or manufacturing of the SteriCare Product because it was unreasonably dangerous in that it increased the risks of severe infection and thus renders the Product unreasonably dangerous when used in the manner it was intended and to an extent beyond what would be contemplated by the ordinary consumer.

138. Defendants also breached their duty by failing to use reasonable care by failing to use cost-effective, reasonably feasible alternative designs in the design and/or manufacturing of the SteriCare Product.

139. A reasonable actor under the same or similar circumstances would have designed a

safer product.

140. A reasonable actor under the same or similar circumstances would have not allowed the SteriCare Product to become unsterile, adulterated, and/or contaminated with bacteria.

141. As a proximate result of Defendants' design, manufacture, marketing, sale, and distribution of the SteriCare Product, Plaintiff was injured catastrophically and was caused severe pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and economic damages.

142. Defendants are liable in tort to Plaintiff for their wrongful and reckless conduct pursuant to New Jersey common and statutory law.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

**COUNT SEVEN: NEGLIGENCE – NEGLIGENT MISREPRESENTATION AND OMISSION**
**(Against All Defendants)**

143. Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

144. Through their labeling, advertising, and over the course of their regular business, Defendants, Nurse Assist, AdaptHealth, and McKesson, made representations to Plaintiff concerning the active and inactive ingredients (as well as the alleged uncontaminated nature) in the SteriCare Product.

145. Defendants intended that the Plaintiff rely on their representations.

146. Defendants' representations were material to Plaintiff's decision to use the Product.

147. In addition, Defendants, LBC Funds and CIFC, as the "controlling investors" and

"majority stakeholders" of the Nurse Assist SteriCare Product, had financial control over the Nurse Assist SteriCare Product, and as a result, a duty to ensure accurate information was provided to consumers.

148. Defendants have a duty to provide accurate information to consumers with respect to the ingredients and/or contaminants identified in the SteriCare Product, as detailed above.

149. Defendants failed to fulfill their duty to provide accurate information and disclose in the Product labeling and advertising the Product was unsterile, adulterated, and contaminated with bacteria.

150. Additionally, Defendants have a duty to not make false representations with respect to the Product.

151. Defendants failed to fulfill their duty or use ordinary care when they made false representations and omissions regarding the quality and safety of the SteriCare Product, as detailed above.

152. Such failures to disclose on the part of Defendants amount to negligent omission, and the representations regarding the quality and safety of the product amount to negligent misrepresentation.

153. Plaintiff reasonably relied upon such representations and omissions to his detriment.

154. As a proximate result of Defendants' design, manufacture, marketing, sale, distribution, and financial control of the SteriCare Product, Plaintiff was injured catastrophically and was caused severe pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and economic damages.

155. Defendants are liable in tort to Plaintiff for their wrongful and reckless conduct

pursuant to New Jersey common and statutory law.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

**COUNT EIGHT: BREACH OF IMPLIED WARRANTY**
**(Against All Defendants)**

156. Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

157. Because the SteriCare Product is unsterile, adulterated, and contaminated with bacteria, it was not of the same quality as those generally acceptable in the trade and was not fit for the ordinary purposes for which such saline fluid is used.

158. Plaintiff used the SteriCare Product in reliance upon Defendants' skill and judgment and the implied warranties of fitness for the purpose.

159. The SteriCare Product was not altered by Plaintiff.

160. Plaintiff was a foreseeable user of the SteriCare Product.

161. Plaintiff used the SteriCare Product in the manner intended.

162. As alleged, Defendants' saline fluid was not adequately labeled and did not disclose that it was unsterile, adulterated, and contaminated with bacteria.

163. The SteriCare Product did not measure up to the promises or facts stated in the marketing, packaging, labeling, advertisement, and communications by and from Defendants.

164. Defendants impliedly warranted that the SteriCare Product was merchantable, fit, and safe for ordinary use.

165. Defendants further impliedly warranted that the SteriCare Product was fit for the particular purposes for which it was intended and sold.

166. Contrary to these implied warranties, Defendants' saline fluid was defective, unmerchantable, and unfit for its ordinary use when sold and unfit for the particular purpose for which it was sold.

167. As a proximate result of Defendants' design, manufacture, marketing, sale, distribution, and financial control of the SteriCare Product, Plaintiff was injured catastrophically and was caused severe pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and economic damages.

168. Defendants are liable in tort to Plaintiff for their wrongful and reckless conduct pursuant to New Jersey common and statutory law.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

**COUNT NINE: VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT**
**(Against All Defendants)**

169. Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

170. New Jersey's Consumer Fraud Act ("NJCFA") section 56:8-2 states:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.
>
> N.J. Stat. § 56:8-2.

171. Defendants, Nurse Assist, AdaptHealth, and McKesson, violated the NJCFA by

misrepresenting the sterile, uncontaminated, and safe nature of the SteriCare Product; that is, the SteriCare Product is not sterile, is contaminated with bacterium and/or pathogens, and is not safe.

172. In the course of business, Defendants, Nurse Assist, AdaptHealth, and McKesson, made affirmative misrepresentations that conveyed to Plaintiff and the general public that the SteriCare Product was safe and suitable as a treatment for wound care. Defendants, however, concealed and suppressed material facts concerning the SteriCare Product, including that the Product is unsafe and contaminated with a bacterium and/or pathogens that can lead to, cause, and exacerbate severe infection.

173. Plaintiff had no way of discerning that Defendants' representations were false and misleading because the labeling did not disclose the potential presence of pathogens and/or bacteria, the violation of CGMPs by Defendants, and Plaintiff had no reason to otherwise suspect that the SteriCare Product was contaminated.

174. Defendants, Nurse Assist, AdaptHealth, and McKesson, thus violated New Jersey law by making statements, when considered as a whole from the perspective of the reasonable consumer, that conveyed that the SteriCare Product was safe and suitable as a treatment for wound care.

175. Defendants, Nurse Assist, AdaptHealth, and McKesson, made affirmative misrepresentations about the safety and quality of the SteriCare Product that were not true, and they failed to disclose material facts regarding the design, manufacture, testing, packaging, and labeling of the SteriCare Product, which mislead Plaintiff.

176. Defendants, LBC Funds and CIFC, as the "controlling investors" and "majority stakeholders" of the Nurse Assist SteriCare Product, violated the NJCFA by concealing, suppressing, and/or omitting to the general public the unsterile, adulterated, and contaminated

nature of the Product.

177. Defendants knew or should have known that their conduct violated New Jersey law.

178. Defendants owed Plaintiff a duty to disclose the true and unsafe nature of the SteriCare Product.

179. Defendants' misrepresentation of the true characteristics of the SteriCare Product (*i.e.*, that the Product is unsterile and contaminated) was material to Plaintiff.

180. Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true, unsafe nature of the SteriCare Product.

181. Plaintiff would not have used the SteriCare Product had he known that the Product was unsterile and contaminated with a bacterium and/or pathogens.

182. Defendants' violations present a continuing risk to Plaintiff as well as to the general public, including public health. Thus, Defendants' unlawful acts and practices complained of herein affect the public interest.

183. Plaintiff suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and failure to disclose material information. Defendants have an ongoing duty to all customers and the public to refrain from unfair and deceptive practices under New Jersey law. Plaintiff suffered ascertainable loss because of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

184. Through its deceptive practices, Defendants have improperly obtained and retained money from Plaintiff.

185. The injury caused by Defendants' conduct is not outweighed by any countervailing benefits to consumers, including Plaintiff, or to competition.

186. The injury caused by Defendants’ conduct could not reasonably have been avoided by Plaintiff because he did not know and could not have known that the Product was unsterile and contaminated with bacteria and/or pathogens.

187. As a proximate result of Defendants’ design, manufacture, marketing, sale, distribution, and financial control of the SteriCare Product, Plaintiff was injured catastrophically and was caused severe pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and economic damages.

188. Defendants are liable in tort to Plaintiff for their wrongful and reckless conduct pursuant to New Jersey common and statutory law.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in Plaintiff’s favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys’ fees and all such other and further relief as this Court deems just and proper.

**COUNT TEN: PRODUCTS LIABILITY – POST-SALE DUTY TO WARN**
**(Against All Defendants)**

189. Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

190. On November 6, 2023, Defendants initiated a voluntary recall of the Product due to the potential for a lack of sterility assurance, resulting in a nonsterile product.

191. Plaintiff did not receive notice of the recall from Defendants until March 12, 2024, four months after the Defendants had initiated the recall.

192. In addition, Defendants, Nurse Assist, AdaptHealth, and McKesson, knew or should have known of the unsterile, adulterated, and contaminated nature of their saline fluid Product prior to November 2023, yet failed in their post-sale duty to warn consumers of the defective Product.

193. In addition, Defendants, LBC Funds and CIFC, as the "controlling investors" and "majority stakeholders" of the Nurse Assist SteriCare Product, knew or should have known of the unsterile, adulterated, and contaminated nature of the Product. These "controlling investors" and "majority stakeholders" had a post-sale duty to warn consumers of the defective Product, yet failed to timely initiate a recall or otherwise warn consumers.

194. As a proximate result of Defendants' breach of their post-sale duty to warn, Plaintiff was injured catastrophically and was caused severe pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and economic damages.

195. Defendants are liable in tort to Plaintiff for their wrongful and reckless conduct pursuant to New Jersey common and statutory law.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

**COUNT ELEVEN: PUNITIVE DAMAGES UNDER NEW JERSEY COMMON LAW, NEW JERSEY PUNITIVE DAMAGES ACT (N.J.S.A. 2A:15-5.9, et seq.) and NEW JERSEY PRODUCTS LIABILITY ACT (NJ PLA) (N.J.S.A. 2A:58C-1, et seq.) (Against All Defendants)**

196. Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

197. Plaintiff is entitled to punitive damages because Defendants' wrongful acts and/or omissions were wanton or in conscious disregard of the rights of others. Defendants misled the public at large, including Plaintiff, by making false representations about the safety and efficacy of the Product and by contaminating the Product with bacteria. Defendants affirmatively disregarded the FDA's CGMP, including, as detailed in the factual allegations section, the lack of appropriate microbial testing and/or failure to include proper sterility of the saline fluid to prevent

bacterial growth and/or pathogens entering the Product.

198. The Defendants have acted willfully, wantonly, and/or recklessly in one or more of the following ways:

a. Defendants, Nurse Assist, AdaptHealth, and McKesson, knew, or should have known, of the danger of exposure to bacteria imposed by the unsterile saline Product in an at-risk (i.e. wound care) patient population, yet purposefully proceeded with the design, manufacture, marketing, sale, and distribution of the SteriCare Product;

b. Despite their knowledge and/or conscious disregard of the risk of exposure to bacteria by the SteriCare Product, Defendants affirmatively minimized this risk through the violation of CGMPs, like failing to perform proper microbial or sterility testing, among other things;

c. Defendants, LBC Funds and CIFC, as the "controlling investors" and "majority stakeholders" of the Nurse Assist SteriCare Product, knew, or should have known, of the danger of exposure to bacteria imposed by the unsterile saline Product in an at-risk (i.e. wound care) patient population, yet failed to timely act to warn consumers and/or prevent consumers' injuries; and

d. Through the actions and/or inactions outlined above, Defendants exhibited a reckless indifference to the safety of users of the SteriCare Product, including Plaintiff as described herein, knowing and/or consciously disregarding the dangers and risks of the Product, yet concealing and/or omitting this information. The concerted action was outrageous due to Defendants' reckless indifference to the safety of users of the SteriCare Product, including Plaintiff.

199. As a direct and proximate result of the willful, wanton, and/or reckless conduct of the Defendants, Plaintiff has sustained damaged as set forth above.

200. All of the Defendants were aware – or should have been aware – that their Products were unsterile, adulterated, and contaminated with bacteria and/or pathogens through proper testing. Despite this awareness, all of the Defendants failed to warn consumers of this known hazard. As such, all of the Defendants should be liable for punitive damages to Plaintiff.

201. Plaintiff is entitled to punitive damages as a result of Defendants' reckless conduct in wanton disregard of Plaintiff's safety pursuant to N.J.S.A. 2A:15-5.9, *et seq.*, and N.J.S.A.

2A:58C-1, *et seq.*

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment and an award of damages against Defendants, as follows:

a) special damages, to include past and future medical and incidental expenses, according to proof;
b) past and future loss of earnings and/or earning capacity, according to proof;
c) past and future general damages, to include pain and suffering, emotional distress and mental anguish, according to proof;
d) pre-judgment and post-judgment interest;
e) the costs of this action; and
f) treble and/or punitive damages to Plaintiff; and
g) granting any and all such other and further legal and equitable relief as the Court deems necessary, just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury to the full extent permitted by law.

Dated: June 4, 2026

*/s/ Michael G. Daly*

**MOTLEY RICE, LLC**
Michael G. Daly, Esq. ID No. 025812010
Joshua M. Neuman, Esq., ID No. 209832016
1717 Arch Street, Suite 3610
Philadelphia, Pennsylvania 19103
mdaly@motleyrice.com
jneuman@motleyrice.com
Phone: (267) 267-4740
Fax: (267) 267-4759
*Attorneys for Plaintiff, Matthew Juliano*